UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                              CRIMINAL NO. 06-51 (RHK/JSM)

      Plaintiff,

v.                                                     <u>REPORT AND RECOMMENDATION</u>

FRANKLIN DAVID KIRK,

      Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant Franklin David Kirk's Motions (1) to Suppress Pre-Trial Identification Evidence and Derivative Evidence [Docket No. 14], (2) to Suppress Evidence Obtained Through Search and Seizure [Docket No. 15], and (3) to Suppress Statements and Derivative Evidence [Docket No. 16].

Assistant United States Attorney Nathan Petterson appeared on behalf of the Government; Mark Nyvold appeared on behalf of defendant Franklin David Kirk, who was personally present.

Based upon the pleadings, testimony taken from Officer Roger Leonard, exhibits submitted at the hearing, pre-hearing submissions, and post-hearing submissions, **IT IS RECOMMENDED** that:

1.    Defendant Franklin David Kirk's Motion to Suppress Pre-Trial Identification Evidence and Derivative Evidence [Docket No. 14] be DENIED for the reasons stated in the memorandum below.

2.    Defendant Franklin David Kirk's Motion to Suppress Evidence Obtained

Through Search and Seizure [Docket No. 15] be DENIED for the reasons stated in the memorandum below.

3.     Defendant Franklin David Kirk's Motion to Suppress Statements and Derivative Evidence [Docket No. 16] be GRANTED in part and DENIED in part, for the reasons stated in the memorandum below.

## I.     **FACTUAL BACKGROUND**

Officer Roger Leonard testified at the hearing on pretrial motions that he was involved in the incident resulting in the arrest of defendant Franklin David Kirk.

On January 20, 2006, Officer Leonard was working as a security guard at Bremer Bank. Although he was wearing his St. Paul Police Department uniform, Officer Leonard was off duty.

At approximately 10:30 a.m. on that day, Kirk entered the bank. He approached a bank teller, Susana Araujo, at her station and told her twice that this is a robbery and to give him the money. Araujo did not comply with Kirk's demand. He then walked out of the bank. This encounter lasted approximately 12 seconds. See Gov't Exs. 1-5 (still photos from bank video).

As Kirk walked out of the bank, Araujo pointed out Kirk to Officer Leonard and yelled, "Roger, stop that guy. He tried to rob the bank." Officer Leonard testified that nobody else was leaving the bank as Kirk exited the bank and that he saw Kirk get into a taxicab that was waiting in the parking lot. There was one other car in the parking lot, but it was parked on the northern most part of the lot.

Officer Leonard approached the taxicab. Kirk was seated in the backseat of the taxicab. Officer Leonard asked Kirk to get out of the taxicab and then asked him if he knew

2

what had led Officer Leonard to come out of the bank to talk to him.  Kirk stated that he did not know why Officer Leonard came out of the bank to get him.

Officer Leonard testified that he then performed a pat down of Kirk.  Officer Leonard did not find any weapons on Kirk and did not take anything from him.  Officer Leonard also asked Kirk his name and if he had any identification on him.  Kirk told Officer Leonard his name and told him that his driver's license was in his back pocket.  Officer Leonard found Kirk's photo identification in the wallet in his back pocket and stated that the picture and name listed on the driver's license matched that of Kirk.  Officer Leonard asked Kirk again what was it that had led Officer Leonard to come out of the bank to speak with Kirk.  Kirk answered that he was inside the bank to get change.

Officer Leonard then told Kirk that they had to go inside the bank.  Officer Leonard did not handcuff Kirk, but Kirk was under his physical control.  Officer Leonard took Kirk into an office in the bank.  Kirk sat down on a chair and then the bank manager and Araujo, the teller, entered the office.  Officer Leonard testified that Kirk appeared to be nervous and kept his head down.  Officer Leonard again asked Kirk if he knew why he was in the office and Kirk said, "I said it.  I said it.  I told her to give me the money, and that it was a robbery."  Before making this statement, Kirk was not read the Miranda rights.  Kirk was in the bank office for approximately 5 to 10 minutes.  During this encounter, neither Araujo nor the bank manager identified Kirk as the attempted bank robber.  The bank manager did ask Kirk some questions, but Officer Leonard could not recall what was said.

Officer Leonard then called the police and an on-duty squad reported to the scene, arrested Kirk, and transported him to jail.  At the jail, police took his clothing and identification.

## II.   DISCUSSION

Kirk has moved this Court to suppress any statements he made to the police outside and inside the bank, the seizure of his clothing and personal identification after his arrest, any testimony by bank employees based on seeing Kirk in the bank's office after the attempted robbery, and any identification by the bank employees that may be made of him, in-court or out, subsequent to the show-up identification made of him at the bank.   See Def.'s Memorandum in Support of Motion to Suppress, at 1, [Docket No. 22].   According to Kirk, Officer Leonard lacked a legal basis to stop Kirk in the first place, and consequently, everything else that transpired after that encounter—obtaining his identity, requiring him to come back into the bank, obtaining his admission about the robbery, arresting him, and seizure of his clothing and personal identification after the arrest—was the fruit of an illegal seizure and constitutes a violation of the Fourth and Fifth Amendments.   Id. at 1-2.

### A.      Probable Cause for Arrest

Kirk first argued that Officer Leonard did not have an articulable suspicion that it was Kirk who attempted to rob the bank when he detained Kirk outside the bank and that officers did not have probable cause to arrest Kirk.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."   However, an investigatory stop is exempt from the Fourth Amendment's requirements that a seizure of a person be made pursuant to a warrant or predicated on probable cause.   See United States v. Ortiz-Monroy, 332 F.3d 525, 528 (8th Cir. 2003) (citing Terry v. Ohio, 392 U.S. 1, 21-22 (1968)).   "A Terry investigatory stop allows an officer briefly to

detain a citizen if the officer has reasonable suspicion that 'criminal activity may be afoot.'"

Ortiz-Monroy, 332 F.3d at 528 (quoting Terry, 392 U.S. at 30); see also United States v.

Johnson, 326 F.3d 1018, 1022 (8th Cir. 2003) (citation omitted) ("[A] law enforcement officer

may stop and briefly question an individual if the officer has a reasonable suspicion that the

person has committed or is about to commit a crime.").  "[I]n justifying the particular intrusion

the police officer must be able to point to specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at

21; see also United States v. Poiter, 818 F.2d 679, 683 (8th Cir. 1987) ("[T]o pass Fourth

Amendment scrutiny, a Terry-type stop must be based on a reasonable articulable suspicion

of criminal activity, rather than mere conjecture or hunches.  In deciding whether the requisite

degree of suspicion exists, we view the agents' observations as a whole. . . .").  In assessing

the reasonableness of the action, "it is imperative that the facts be judged against an objective

standard: would the facts available to the officer at the moment of the seizure 'warrant a man of

reasonable caution in the belief' that the action taken was appropriate?" Terry, 392 U.S at 21-

22 (citations omitted).

The Court finds that Officer Leonard had reasonable articulable suspicion that criminal

activity was afoot to perform an investigatory stop of Kirk.  Officer Leonard testified that

Aruajo, the bank teller, pointed to Kirk and yelled to Officer Leonard to stop Kirk because he

had tried to rob the bank.  Officer Leonard testified that he saw Kirk as he was leaving the

bank and that Kirk was the only person leaving the bank at that time.  These facts alone

warranted Officer Leonard to believe that temporarily detaining Kirk was an appropriate

action.

The Court also finds that officers had probable cause to arrest Kirk.  A warrantless arrest requires probable cause.  See United States v. Adams, 346 F.3d 1165, 1169 (8th Cir. 2003).  "'To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of the arrest.'" Id. (quoting United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003)).  "We will find that probable cause existed at the time of arrest when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested."  Id. (citing same); see also United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (finding that probable cause "'exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested.'") (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001)).

This Court finds that the totality of the circumstances—that Araujo pointed to Kirk who she said just tried to rob the bank, that Officer Leonard saw Kirk, and that he was the only man leaving the bank at the time Araujo made the statement—was more than adequate to establish probable cause to arrest Kirk.  Therefore, to the extent that Kirk is challenging the admissibility of his statements, the propriety of his arrest, or the seizure of his clothing and personal identification based on lack of probable cause, the Court rejects this argument as basis for his motions to suppress.

### B.    Motion to Suppress Identifications of Defendant

Kirk requested that any identifications of him by the bank employees be suppressed.

6

Specifically, Kirk seeks to preclude any testimony at trial by bank employees about what they saw in the bank office after Kirk was brought back into the bank, and any future identification of Kirk by these employees that may be attempted, either in-court or out.  See Def.'s Mem., at 7.

In opposition, the Government argued that even assuming the procedure used by Officer Leonard was suggestive, the totality of the circumstances establishes that the identification was reliable and there is no "very substantial likelihood of irreparable misidentification."   Government's Memorandum in Opposition to Motion to Suppress Evidence, at 5, citing to Simmons v. United States, 390 U.S. 377, 384 (1968).  According the to Government, while Kirk characterizes the encounter in the bank office as an "in-bank show-up," the reality is that "Officer Leonard simply caught up with the would-be robber within seconds of the crime having been committed, and brought him back into the bank a few minutes later."  Id. at 6.  Under these circumstances, there was no "very substantial likelihood of irreparable misidentification."   Id.  Further, the Government argued that any in-court identification which might be made at trial can be attacked by Kirk on cross-examination and considered in light of other evidence admitted at trial, including bank surveillance photographs and clothing seized from Kirk.

Identification testimony that derives from impermissibly suggestive procedures that may lead to an irreparably mistaken identification is prohibited.  See Neil v. Biggers, 409 U.S. 188, 198 (1972) (noting that "[i]t is the likelihood of misidentification which violates a defendant's right to due process").  However, "suggestive procedures, without more, do not require a holding that the due process clause has been violated."  United States v. Hadley, 671 F.2d 1112, 1115 (8th Cir. 1982) (citing Mason v. Brathwaite, 432 U.S. 98, 114 (1977); Biggers, 409

U.S. at 198; Harris v. Wyrick, 644 F.2d 710, 712 (8th Cir. 1981); United States v. Anderson, 618 F.2d 487, 491 (8th Cir. 1980)).  The Court must balance the corrupting effect of a suggestive procedure against the reliability of the identification to determine if testimony about the out-of-court identification and any subsequent identification violates the defendant's due process rights.  See Hadley, 671 F.2d at 1115; see also Manson, 432 U.S. at 114.

A due process challenge to identification testimony is examined in two steps.  First, the court must determine whether the identification procedure used by police was "impermissibly suggestive."  Graham v. Solem, 728 F.2d 1533, 1541 (8th Cir. 1984) (citation omitted).  If so, then the court must determine whether, "in the totality of the circumstances, the identification was reliable even though the procedure was suggestive, and whether there is a 'very substantial likelihood of irreparable misidentification.'"  See also Hadley, 671 F.2d at 1115 (citations omitted).  "Pared to its essence, the second inquiry is whether the identification is reliable."  Graham, 728 F.2d at 1541 (citations omitted).

In assessing reliability under the totality of the circumstances, the United States Supreme Court has delineated five factors that courts should consider:  "(1) the opportunity of the witness to view the criminal at the time of the crime;  (2) the witness' degree of attention;  (3) the accuracy of his prior description of the criminal;  (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation."  Manson v. Braithwaite, 432 U.S. 98, 108 (1977); see also Graham, 728 F.2d at 1541-42 (citations omitted).

The Court finds that any testimony by bank employees about what they saw (Kirk and what he was wearing) in the bank office, and any potential identification of Kirk at trial, is

admissible.  First, while bringing Kirk back into the bank may have been suggestive, it did not result in a very substantial likelihood of irreparable misidentification.  Rather, the Court finds this situation akin to an on-the-scene identification, which the Eighth Circuit has upheld.  See United States v. King, 148 F.3d 968, 970 (8th Cir. 1998) ("Police officers need not limit themselves to station house line-ups when the opportunity for a quick, on-the-scene identification arises.  Such identifications are essential to free innocent suspects and to inform the police if further investigation is necessary.  Necessary incidents of on-the-scene identifications, such as the suspects being handcuffed and in police custody, do not render the identification procedure impermissibly suggestive.  Whether such factors cast doubt on the accuracy of a positive identification is an issue for the jury.") (citations omitted).

Further, any testimony by Araujo or the bank manager about what they saw or heard in the bank office, is reliable.  Kirk was inside the bank for 34 seconds, 12 seconds of which was face-to-face with Araujo.  Araujo then pointed out Kirk to Officer Leonard as Araujo yelled, "Roger, stop that guy.  He tried to rob the bank."  Moments later Officer Leonard caught Kirk before he made a getaway and immediately brought him back.  Under these facts, where the security guard caught the bank robbery suspect within seconds of the occurrence of the crime and brought the suspect back to the scene of the crime within minutes, there is no "very substantial likelihood of irreparable misidentification".  The Court finds that the encounter in the bank office is admissible, and that this encounter will not taint future identifications.  Therefore, the Court recommends that Kirk's motion to suppress identifications be denied.

### C.      Motion to Suppress Statements

Kirk seeks to suppress the statements he made inside the bank, and in particular the

statement he made to Officer Leonard—"I said it.  I said it.  I told her to give me the money, and that it was a robbery."  Kirk argued that his statement should be suppressed because it was the result of an illegal detention (which this Court has already rejected) and on grounds that it was obtained in violation of Miranda v Arizona, 384 U.S. 436, 444 (1966).  In this regard, Kirk argued that a Miranda warning must be given prior to any questioning when a suspect's freedom of action is curtailed to the degree associated with formal arrest.  See United States v. Pelayo-Ruelas, 345 F.3d 589, 595 (8th Cir. 2003).  Here, Kirk argued that a person in his position would have believed his freedom of action was curtailed to the degree associated with formal arrest because Officer Leonard was wearing his St. Paul Police Department uniform and Kirk believed he was required to follow Officer Leonard's directions, he did not know Officer Leonard was off-duty, Officer Leonard told Kirk that he had to go back inside the bank, and once inside the bank, Officer Leonard placed Kirk in an office and provided a chair for him on which to be seated.  Further, Officer Leonard testified that even if Kirk wanted to leave, he would not have allowed Kirk to do so.

In response, the Government argued that the statements made by Kirk were made during an investigative detention supported by reasonable suspicion.  Further, the Government argued that Kirk had not been formally arrested at the time he made the statement about robbing the bank, and that he had not been subjected to restraints comparable to those associated with a formal arrest.  In this regard, the Government asserted that Kirk was not handcuffed or restrained in any way, Officer Leonard was the only officer on the scene and he never drew his weapon, and the entire encounter—from the time it began until the statement was made—lasted only a few minutes.  Further, Kirk was asked a modest number of

questions, all limited in scope to confirm or dispel Officer Leonard's suspicion that Kirk had attempted to rob the bank.  Finally, the Government argued that Kirk was not in custody for the purpose of Miranda until after the statement had been made.

As discussed above, "[a] Terry investigatory stop allows an officer to briefly to detain a citizen if the officer has reasonable suspicion that 'criminal activity may be afoot.'" Ortiz-Monroy, 332 F.3d at 528 (quoting Terry, 392 U.S. at 30); see also United States v. Johnson, 326 F.3d 1018, 1022 (8th Cir. 2003) (citation omitted) ("[A] law enforcement officer may stop and briefly question an individual if the officer has a reasonable suspicion that the person has committed or is about to commit a crime.").  "No Miranda warning is necessary for persons detained for a Terry stop."  United States v. McGauley, 786 F.2d 888, 890-91 (8th Cir. 1986) (citing Berkemer v. McCarty, 468 U.S. 420 (1984).  However, "[i]t is settled that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer, 468 U.S. at 440 (citations omitted).  If a person detained pursuant to a Terry stop "thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id.

Under Miranda, an individual must be advised of his or her right to be free from compulsory self-incrimination and the right to the assistance of an attorney any time the individual is taken into custody for questioning.  Miranda v. Arizona, 384 U.S. at 444; United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990); see also United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (holding that "[t]he protections afforded by Miranda are only triggered when an individual 'is both in custody and being interrogated'").

"Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." <u>Miranda</u>, 384 U.S. at 444. When determining whether a suspect is in custody, courts consider the following six "indicia of custody":

    (1)  whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest;

    (2)  whether the suspect possessed unrestrained freedom of movement during the questioning;

    (3)  whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

    (4)  whether strong arm tactics or deceptive stratagems were employed during questioning;

    (5)  whether the atmosphere of the questioning was police dominated;  and

    (6)  whether the suspect was placed under arrest at the termination of the questioning.

<u>Griffin</u>, 922 F.2d at 1349; <u>see</u> <u>also</u> <u>United States v. Axsom</u>, 289 F.3d 496 (8th Cir. 2002). The first three factors are considered "mitigating factors" which, if found, tend to show that the suspect was not in custody. <u>Griffin</u>, 922 F.2d at 1349. The remaining three factors are characterized as "coercive factors" which, if found, tend to show the existence of custody. <u>Griffin</u>, 922 F.2d at 1349.

The determination of whether an individual is in custody at a particular time depends on "the extent of the physical or psychological restraints placed on the suspect during

interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." <u>Griffin</u>, 922 F.2d at 1347 (quoting <u>Berkemer</u>, 468 U.S. at 442).  The determination of whether a person is in custody or not is based on the totality of the circumstances, with none of the factors being dispositive, and a particularly strong showing on one factor may compensate for a deficiency on another factor.  <u>Id.</u>  The ultimate inquiry is whether there was a formal arrest or restraint on defendant's movement of the degree associated with a formal arrest.  <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1995).

The question for this Court is whether once Kirk was brought into the bank and seated in the bank's office, did <u>Miranda</u> become applicable because Kirk's freedom of action was curtailed to a degree associated with formal arrest—<u>i.e.</u> Kirk was rendered in custody?  <u>See</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984)).

Applying the <u>Griffin</u> factors to this case, on the one hand, it is undisputed that Officer Leonard used no strong-arm tactics or deceptive stratagems.  At no time did Officer Leonard, the only officer on the scene, tell Kirk that he was under arrest or draw his weapon.

On the other hand, Officer Leonard never informed Kirk that he was not under arrest and would not be placed under arrest after questioning, or that he was free to leave or that he did not have to speak to him.  <u>See e.g.</u> <u>United States v. Czichray</u>, 378 F.3d 822, 826 (8th Cir. 2004) (determining defendant was not in custody when he was advised his participation in the interview was voluntary and he was free to ask agents to leave his home); <u>United States v. Sutera</u>, 933 F.2d 641, 646 (8th Cir. 1991) (determining defendant was not in custody when he "was informed that he was not under arrest, that he did not have to answer questions, and that he could leave at any time.").  In this regard, Kirk was brought back into the bank and seated in

13

the bank's office.  This fact makes this case different from United States v. Pelayo-Ruelas, 345 F.3d 589, 591-93 (8th Cir. 2003), relied on by the Government, where two unmarked police cars pulled up to the defendant's car, but did not block his exit path, and the defendant was asked a number of questions by one officer along a service road.  Then Officer Leonard questioned Kirk about what happened inside the bank while Kirk was seated inside the enclosed office.  Further, Officer Leonard was wearing his St. Paul Police Department uniform, even though he was off-duty, which created the appearance that he was on-duty.  This Court concludes that a "'reasonable person in [Kirk's] position would have understood his situation'" to be one of custody," Griffin, 922 F.2d at 1347 (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)), and that there was sufficient restraint on Kirk's movement to amount to a formal arrest.  Stansbury v. California, 511 U.S. 318, 322 (1995).  Accordingly, after reviewing all the facts of the case, this Court concludes that Kirk was in custody at the time he stated that he had robbed the bank.

In addition, this Court finds that Kirk was being interrogated when he was in the bank office.  "Interrogation" means "questioning initiated by law enforcement officers."  Miranda, 384 U.S. at 444.  The term "interrogation" is defined as "'express questioning or its functional equivalent.'  This includes 'words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the that police should know are reasonably likely to elicit an incriminating response . . .'" United States v. Henderson, 770 F.2d 724, 728 (8th Cir. 1985) (emphasis in original) (quoting Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980); United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995)).  Thus, the test for determining whether questioning is "interrogation" within the meaning of Miranda, is whether,

under all of the circumstances involved in a given case, questions are reasonably likely to elicit an incriminating response from the suspect. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

Here, it is not disputed that Officer Leonard questioned Kirk about the attempted bank robbery. Further, it is clear to the Court that the purpose of Officer Leonard's questions to Kirk was to elicit an incriminating response from him regarding the attempted bank robbery. Therefore, the Court recommends that Kirk's statements to Officer Leonard in the bank office be suppressed because once he was brought back into the bank and seated in the office, a custodial interrogation without the proper Miranda warning took place. However, to the extent that Kirk also sought to suppress "derivative evidence" flowing from these suppressed statements—i.e. the clothing and personal identification taken from him at the jail after his formal arrest—that motion is denied, as this Court has already determined that there was probable cause to arrest Kirk without the statements made by Kirk in the bank office.

## III.    RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED that:

1.    Defendant Franklin David Kirk's Motion to Suppress Pre-Trial Identification Evidence and Derivative Evidence [Docket No. 14] be DENIED.

2.    Defendant Franklin David Kirk's Motion to Suppress Evidence Obtained Through Search and Seizure [Docket No. 15] be DENIED.

3.    Defendant Franklin David Kirk's Motion to Suppress Statements and Derivative Evidence [Docket No. 16] be GRANTED in part and DENIED in part.

Dated:          April 18, 2006


                              s/ *Janie S. Mayeron*
                              JANIE S. MAYERON
                              United States Magistrate Judge



        Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **May 5, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

        Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **May 5, 2006**.